EMERSON W. PEET *vs.* FRANK G. SHERWOOD and another.

June ·9, 1890.

**Broker to Obtain Loan—Commission, when Earned.**—The rights and duties of a broker employed to secure a loan depend upon the same principles which govern the broker who undertakes to find a purchaser of property. He is entitled to his commissions when he has procured a lender ready, willing, and able to lend the money upon the authorized terms.

**Same—Borrower to Make Good Title.**—The borrower, when employing such a broker, always does so upon the implied conditions (if there be no express stipulation in respect·to the matter) that he has the ability and will make or tender to the lender a title free from infirmity or defect.

Action brought in the district court for Ramsey county, to recover $375 for services under an employment to procure a real-estate-mortgage loan. At the trial, before *Kelly*, J., at the close of the evidence, each party moved that a verdict be directed in his favor. A verdict was directed for defendants, a new trial was refused, and the plaintiff appealed.

*Ambrose Tighe*, for appellant.

*Warner & Lawrence*, for respondents.

COLLINS, J. · Plaintiff was a mortgage-loan broker, to whom defendants applied for a loan of $20,000 upon a city lot. The application was in writing, upon a blank furnished by plaintiff, in which the lot was particularly described as to size and location. In reply to one of the printed questions, defendants stated that the lot was free and clear of all liens and incumbrances, except "$16,825, to be clear." Thereupon plaintiff undertook to secure the required amount from eastern parties. A few days later, upon being informed that so large a sum could not be had upon the security offered, defendants agreed in writing with plaintiff, "when notified of an acceptance of their application for a loan," to pay to him "the sum of 2 per cent. on face of loan dollars for his services, provided the loan is made for $18,500." It was further agreed between the parties, upon discovering that plaintiff's correspondent, a corporation, would loan

no more than $17,000 upon the property, that it should be secured by a first mortgage for that amount, while plaintiff himself should furnish the balance of $1,500, to be secured by a second mortgage. The plaintiff stood ready to fulfil his agreement, and the corporation had agreed to loan the $17,000, when it discovered a defect in defendants' title, in the nature of an easement,—a private alley-way ten feet in width upon the side, and eight feet wide upon the rear, of the lot; and the corporation thereupon refused to proceed further. Had it not been for this defect, the loan would have been made. Upon account of it, and for this reason alone, the security was rejected. This action was brought by plaintiff to recover the amount of his commissions, precisely as if the negotiations had ended in the furnishing of the money. The trial court directed a verdict for defendants, and in so doing the court erred.

The rights and duties of a broker employed to secure a loan depend upon the same principles which govern the broker who undertakes to find a purchaser of property, and no substantial distinction can be made. The inquiries in each case are, what did the broker undertake to do? has he completed his undertaking? and, if not, is the difficulty and failure attributable to his own act, or that of the party by whom he was employed? The loan broker is entitled to his commissions when he has procured a lender who is ready, willing, and able to lend the money upon the authorized terms. This done, his duty is performed, and he is entitled to compensation whether the loan is consummated or not, unless his right thereto is, by special agreement, made to depend upon conditions which the law does not annex to his engagement as a broker. He assumes no greater or different obligation in respect to title in case of a loan than when employed to make a sale. The borrower, when employing a broker to procure or make a loan for him, always does so upon the implied conditions (if there be no express stipulation in respect to the matter) that he has the ability and will make or tender to the lender a title free from infirmity. It is not the broker's duty, and no part of his engagement, to remove incumbrances, or to cure defects in title, and, if the loan is not effected in consequence of an incumbered or defective title, he is entitled to his commissions. He has performed

his contract; the default is with the other party. *Vinton* v. *Baldwin*, 88 Ind. 104; *Holly* v. *Gosling*, 3 E. D. Smith, 262; *Doly* v. *Miller*, 43 Barb. 529; *Knapp* v. *Wallace*, 41 N. Y. 477; *Gonzales* v. *Broad*, 57 Cal. 224; *Green* v. *Reed*, 3 Fost. & F. 226; *Green* v. *Lucas*, 31 Law T. (N. S.) 731; Mechem, Ag. § 970.

Finally, it is argued that because, after discovering the existence of the alley-way, plaintiff urged, in a letter to the corporation, that the lot so incumbered was ample security for the amount of money required, and because, in the same letter, he stated that, if the loan was not effected, he could recover nothing for his services and disbursements in the transaction, he cannot prevail in this action. We are unable to see why he should be punished for attempting to convince his correspondent that it was in error when regarding the alleyway as seriously impairing the value of the lot. Nor can we understand why he is prevented from recovering in this action because he did not know, or, perhaps, misunderstood, his legal rights when writing to the corporation.

Order reversed.