JOHN B. FITZPATRICK *vs.* DELIA S. GILSON.

Suffolk.   November 13, 1899. — September 4, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Broker's Commission — Finding — Action — Defect in Title — Written Application for Loan.*

The contention that a broker who was employed "to procure a loan" does not earn his commission unless the money to be borrowed is actually paid over, or a valid contract is made by which the customer procured by the broker agrees to lend the money, and that this applies to a case where the loan is not made, because, by reason of the defect in his title, the borrower is not able to give the mortgage he stipulated to give to the customer procured by the broker, is unsound.   If there is evidence which would warrant a jury in finding that the plaintiff found a customer accepted by the defendant who was able, ready, and willing to make the loan, and the jury so find, the plaintiff is entitled to recover; and it is immaterial that the defendant's written application to a savings bank for a loan contains the provisions "that the said title will not be deemed to be satisfactory if the estate is held subject to any condition," and that the defendant is to "pay a commission of two per cent."

CONTRACT, to recover a broker's commission.   Trial in the Superior Court, before *Sheldon*, J., who directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions, which appear in the opinion.

*J. E. Crowley*, for the plaintiff.

*L. R. Wentworth*, for the defendant.

LORING, J.   In this case the presiding justice ruled that on the evidence the defendant was entitled to a verdict, and reported the case to this court.   By the terms of the report judgment is to be entered for the plaintiff for $108, and interest from the date of the writ, "if the jury would have been warranted in

finding for the plaintiff." We are of opinion that there was evidence that would have warranted such a finding.

The defendant's first contention is that a broker who is employed " to procure a loan " does not earn his commission unless. the money to be borrowed is actually paid over, or a valid contract is made by which the customer procured by the broker agrees to lend the money; and that this applies to a case where (as in the case at bar) the loan is not made, because, by reason of a defect in her title, the borrower is not able to give the mortgage she stipulated to give to the customer procured by the broker.

We are of opinion that this contention is not correct.

The duty which a broker is employed to perform is to find a customer for that for which his principal directs him to find a customer; in the case at bar, for a loan to be made by the customer, secured by a first mortgage on a specified lot of land, to be made by the principal. The broker found a customer ready to make that loan, and the transaction fell through because the defendant, the broker's principal, did not have a good title to the land in question, that is to say, because of the principal's inability to produce that for which he employed the broker to get him a customer.

When a broker has found a customer for that for which his principal has employed him to find a customer, the broker has performed his duty and has earned his commission, or, as the proposition is usually stated, if the person produced by the broker is able, ready, and willing to buy, sell, or lend, as the case may be, the broker's commission is earned. *McGavock* v. *Woodlief*, 20 How. 221, 222. *Green* v. *Lucas*, 33 L. T. (N. S.) 584, 587. *Middleton* v. *Thompson*, 163 Penn. St. 112. *Sibbald* v. *Bethlehem Iron Co.* 83 N. Y. 378, 383, 384. *Duclos* v. *Cunningham*, 102 N. Y. 678. *Fischer* v. *Bell,* 91 Ind. 243. *Vinton* v. *Baldwin,* 88 Ind. 104, 105. *Peet* v. *Sherwood*, 43 Minn. 447, 448. *Cheatham* v. *Yarbrough*, 90 Tenn. 77. *Budd* v. *Zoller*, 52 Mo. 238, 242, 245. *Buckingham* v. *Harris*, 10 Col. 455.

When the broker has produced a customer, his duty is at an end; so far as his rights, or his duty, are concerned, it is immaterial whether a contract is, or is not, made, or, if made, whether it is, or is not, performed. The broker's right to a commission is no more dependent upon, or affected by, the fact that a contract

is, or is not, drawn up and executed, than it is by the fact that the contract, if drawn up, is, or is not, carried into effect. Making or not making a contract with the customer produced, enforcing or not enforcing a contract, if made, are matters for the broker's principal to do or not to do, as his ability and inclination determine; they are matters with which the broker is not concerned, and on which his right to a commission is not dependent.

That it is no part of a broker's duty to draw up and see to the execution of a contract between his principal and the customer produced by him is settled. See *Cook* v. *Welch*, 9 Allen, 350; *Desmond* v. *Stebbins*, 140 Mass. 339, 342; *Middleton* v. *Thompson*, 163 Penn. St. 112; *Keys* v. *Johnson*, 68 Penn. St. 42, 43; *Duclos* v. *Cunningham*, 102 N. Y. 678.

That a broker's right to a commission is not defeated if a contract is made and not carried out by reason of his principal's inability to perform, see *Green* v. *Lucas*, 33 L. T. (N. S.) 584; *Sweeney* v. *Ten Mile Oil & Gas Co.* 130 Penn. St. 193; *Middleton* v. *Thompson*, 163 Penn. St. 112; *Holly* v. *Gosling*, 3 E. D. Smith, (N. Y.) 262; *Peet* v. *Sherwood*, 43 Minn. 447; *Cheatham* v. *Yarbrough*, 90 Tenn. 79.

The cases of *Holden* v. *Starks*, 159 Mass. 503, *Witherell* v. *Murphy*, 147 Mass. 417, and *Washburn* v. *Bradley*, 169 Mass. 86, are inconsistent with any other view. In *Holden* v. *Starks* it was held that the broker earned his commission when an oral agreement for the sale of land was made, which could not be enforced by reason of the statute of frauds. In *Witherell* v. *Murphy* it was held that a broker, employed to find a purchaser on terms stated by his principal at the time of his employment, was entitled to his commission, when he procured a customer who was able, ready, and willing to buy on the terms stated, though no contract was actually made, because the broker's principal refused to stand by his offer when it was communicated to him. To the same effect see *Fischer* v. *Bell*, 91 Ind. 243; *Buckingham* v. *Harris*, 10 Col. 455; *Kock* v. *Emmerling*, 22 How. 69; *Moses* v. *Bierling*, 31 N. Y. 462; *Vinton* v. *Baldwin*, 88 Ind. 104. It is true that in *Witherell* v. *Murphy* the broker wrote out a contract and delivered it to the customer; but the writing out of that contract at the time when it was written out, namely, after the principal had refused to stand by his offer, could not enlarge

the plaintiff's rights to a commission.   In *Washburn* v. *Bradley*, where a broker was employed to get a person to take the defendant's lease off his hands, and the broker procured a person who covenanted to do so, but who refused to do so because of misrepresentations of the defendant, the broker's principal, the making of the contract did not add to the benefits secured to the principal by the services of the broker.   Had the customer discovered the misrepresentations after the terms had been agreed to, and one minute before the contract was signed, the broker would have been entitled to his commission; in both instances the trade fails by reason of the principal's default.

In the case at bar there was evidence that a copy of the defendant's written application for a loan of $6,000 was submitted to the Cambridge Savings Bank by the plaintiff, the broker employed by the defendant ; that the treasurer of the savings bank wrote to the plaintiff: ." Our board of investment has examined the estate. . . . The board value it at $9,000, and are willing to loan $5,400 ; " (this letter was admitted without objection ;) that the plaintiff showed this letter to the defendant, who thereupon indorsed on the original application : " I hereby agree to accept a loan of $5,400 on my property on Gilson Terrace, Somerville, to be made by the Cambridge Savings Bank " ; " that the Cambridge Savings Bank then referred the defendant's title to their attorney, and that he reported that the title was not good " ; and " that upon this adverse report the bank declined to make the loan." On this evidence the jury would have been warranted in finding that the Cambridge Savings Bank was ready and willing to lend $5,400 on the land described; that the loan was not made because of the defendant's inability to give a good mortgage on that land, and that the defendant accepted the Cambridge Savings Bank as able to make the loan, and accepted $5,400 in place of $6,000 as the amount to be borrowed, by the indorsement on the original application. This evidence warranted a finding for the plaintiff, though by reason of a failure on the part of the plaintiff to prove that St. 1894, c. 317, § 21, had been complied with, he had failed to show that the savings bank ever made a valid and binding agreement to lend the money.

The defendant's second contention is that whatever the general rule may be, it was stipulated in this case that the broker

was not to earn his commission unless the loan was actually made; and the provision in the defendant's application for a loan, "that said title will not be deemed to be satisfactory if the estate is held subject to any condition," is relied on as a stipulation to that effect. It would be enough to dispose of this clause to state that there is nothing to show that the defect, on which the adverse report of the attorney of the savings bank was founded, was that the estate was held subject to a condition. But it is more satisfactory to dispose of the objection on broader grounds. It is plain that this clause cannot be construed to be a stipulation to the effect contended for; it evidently was inserted in the written application that there might be no misunderstanding as to what it was, for which a customer was to be procured, and was not inserted to stipulate that the general rule should not obtain as to what the broker must do to earn his commission. The fact that in the written application it is stated that the defendant is to "pay a commission of two per cent" is not significant; that statement is part of a statement inserted in the application of what expenses are to be paid by the principal, and evidently was included in that statement to prevent a misunderstanding, which might have arisen had it been left out; to prevent the principal being led to think that she was not to pay a commission, because a statement was made of the expenses she was to be at in the matter, and no mention was then made of any commission. The including of this statement as to a commission in the statement of the expenses the defendant was to be at in the matter, cannot be held to convert what purports to be, and is, a written application for a loan, into a special stipulation that in this case the broker should not be entitled to a commission in accordance with the general rule.

The entry must be,

> *Judgment for the plaintiff for $108, and interest from the date of the writ.*