EDWARD H. WIGGIN *vs.* EDWIN C. HOLBROOK & another,
trustees.

Suffolk.    November 21, 1905. — January 4, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Agency*, Commission.   *Broker.    Contract.*

The owner of a note and a mortgage of land securing it by offering to pay a
broker, who has full knowledge of the character of the mortgage, a commission
for selling the note and mortgage makes no implied agreement that if the broker
will find a purchaser the mortgage will give the purchaser a perfect title to
the land in case the note is not paid.

A broker, who undertakes to find a purchaser for a note and mortgage made by a
cemetery association, is not entitled to a commission for procuring a person who
agrees to take the note and mortgage if the title created by the mortgage is sat-
isfactory to his conveyancer and afterwards refuses to take them on such title
not being satisfactory to his conveyancer because in the conveyancer's opinion
a perfect title cannot be acquired by foreclosure against a cemetery association,
and it does not matter whether the conveyancer's opinion is correct or not.

CONTRACT, by a real estate and mortgage broker against the
trustees under a will, to recover a commission of $2,500 for the
alleged procuring of a purchaser of a note and mortgage owned
by the defendants as such trustees.    Writ dated March 2, 1904.

At the trial in the Superior Court before *Richardson*, J., with-
out a jury, it appeared that the defendants were the owners of a
note and mortgage given to them by the Boston Catholic Ceme-
tery Association dated August 21, 1899, for the sum of $85,000,
payable in ten years from its date with interest at five per cent
per annum, which had been assigned by the defendants to the
Provident Institution for Savings in Boston as security for a loan
to the defendants of $50,000, and that the plaintiff knew this
fact.    It further appeared that the defendants offered to pay
$2,500 as a commission for negotiating a sale of the mortgage in
a reasonable time, " say the next thirty days," and that the plain-
tiff procured an agreement with William A. Munroe, Esquire,
as trustee, which is described in the opinion, and which resulted
as there stated.

At the close of the evidence the plaintiff requested the follow-
ing rulings, besides four others which were made by the judge :

"1. Upon all the evidence the finding must be for the plaintiff."

"4. The plaintiff found a customer, to wit, William A. Munroe, who was ready, able and willing to take an assignment of said mortgage.

"5. The title to said mortgage given by the Boston Catholic Cemetery Association to E. C. Holbrook, et als., trustees, was not marketable.

"6. The title to said mortgage was such that William A. Munroe, the customer whom Edward H. Wiggin had procured, reasonably refused to take an assignment of it.

"7. The plaintiff did all he was employed to do, and was entitled to the sum of twenty-five hundred dollars to be paid him by the defendants upon the plaintiff's producing a customer who was ready, able and willing to take an assignment of said mortgage.

"8. If the court finds that the defendants unreasonably refused to make title to said mortgage, then it was the fault of the defendants that the trade by which William A. Munroe was to take an assignment of said mortgage from said trustees fell through.

"9. The defendants refused to give an assignment of said mortgage conveying a good and sufficient title thereto, and since the defendants refused to make title, and finally refused to negotiate through the plaintiff with William A. Munroe, the plaintiff's customer, then the plaintiff is entitled to recover the stipulated sum of twenty-five hundred dollars.

"10. It was through the fault of the defendants that the assignment of said mortgage was not actually taken by the plaintiff's customer, William A. Munroe.

"11. The plaintiff acted in good faith and did all he was required to do in order to entitle him to said commission."

"14. The defendants waived the right to demand a written agreement from William A. Munroe to take an assignment of said mortgage for eighty-five thousand dollars.

"15. The title to said mortgage was defective and not marketable in that Wellington Holbrook and Edwin C. Holbrook as trustees, had no legal right to take from the Boston Catholic Cemetery Association a mortgage of the land in question.

"16.  The Boston Catholic Cemetery Association had no legal capacity to give the mortgage in question for eighty-five thousand dollars to Wellington Holbrook and Edwin C. Holbrook and George O. Smith, trustees.

"17.  Even though the mortgage in question given by the Boston Catholic Cemetery Association to Wellington Holbrook et als., trustees, was enforceable in all its incidents against said Association by said trustees, still an assignee of said mortgage would take such mortgage with full notice of powers and capacity of said corporation, and accordingly would not acquire a marketable title to such mortgage.

"18.  The title to said mortgage was defective, was not marketable, and was such that William A. Munroe reasonably refused to take it in the shape in which it was offered because it was not legally given under the constitution, by-laws and other laws affecting said corporation.

"19.  Both defendants are jointly liable in this action."

The judge refused to make the rulings above quoted, and found for the defendants.  The plaintiff alleged exceptions.

*E. B. Draper*, for the plaintiff.

*H. G. Allen*, for the defendants.

KNOWLTON, C. J.  This is an action by a broker to recover a commission for the sale of a note and mortgage belonging to the defendants.  The sale was not consummated, because the security was not legally satisfactory to the attorney of the purchaser, who thought that the mortgage did not give a right that could be enforced by foreclosure, in such a way as to convey to the purchaser at a foreclosure sale a perfect title to the real estate.  The note and mortgage were given by the Boston Catholic Cemetery Association, for money which was used in the purchase of the real estate described in the mortgage.

The plaintiff contends that he procured a purchaser who was able, ready and willing to take the note and mortgage, if the mortgage conveyed a good title to the real estate described in it, and that the defendants impliedly agreed with him that the mortgage was enforceable, so as to make a perfect title to the property, if there should be a failure to pay the note.  He fails upon both branches of his contention.  In the first place, he was not employed to sell real estate, to which his employers

impliedly agreed that they would give a perfect title if he should find a purchaser. His employment was to sell a note and mortgage as they were, and he testified that, nearly a year before he entered upon his last employment for this purpose, he knew of the mortgage, knew what land it was on, and all the details of it. He knew, of course, that it was given by the Boston Catholic Cemetery Association. If the law relating to cemetery associations affected the validity of the mortgage, he knew the facts which bore upon the question of title, before he undertook to make the sale. The defendants did not agree with him, expressly or by implication, that the title which the mortgage purported to convey was free from legal objection, in reference to the power of such a corporation to make a mortgage. He undertook to sell a note and mortgage made by a cemetery association, and unless he found a purchaser who was ready to take the mortgage notwithstanding the character of the mortgagor, he did not earn his commission. So far as appears, the only question made by the attorney of the purchaser, in regard to the mortgage, was founded on the fact that the mortgagor was a cemetery association. The contract between the plaintiff and the defendants related to a mortgage given by such a corporation, and the defendants were under no obligation to change the mortgage. See *Tombs* v. *Alexander*, 101 Mass. 255.

The plaintiff failed to procure a purchaser who was ready to take the note and mortgage. According to the undisputed testimony of himself and of Mr. Munroe, who were the only witnesses on this part of the case, Mr. Munroe, as a trustee, agreed to buy the note and mortgage if the title created by the mortgage was satisfactory to Mr. Sprague, his conveyancer. His only contract in regard to the matter was subject to this condition. The title was not satisfactory to Mr. Sprague in the particular above referred to. There was a dispute between eminent conveyancers in regard to the effect of the mortgage in this particular. Without reference to the question whether the title under the mortgage was in fact valid or invalid, Mr. Munroe declined to complete the purchase, because the title was not satisfactory to his conveyancer, by whose opinion he chose to be guided. Upon the express condition of his contract with the plaintiff, the agreement was of no effect. The plaintiff, therefore, failed to procure

a purchaser who was ready to take the securities. The condition of his contract of sale was not that the title should be good, but that it should be satisfactory to a particular conveyancer, on whose judgment the purchaser relied. The defendants were at all times ready to assign the note and mortgage, if the plaintiff should find a purchaser who was ready to take them. The failure to make a sale was not the fault of the defendants, but the misfortune of the plaintiff, who failed to find a purchaser who would contract to buy them. See *Fitzpatrick* v. *Gilson*, 176 Mass. 477.

Upon the undisputed facts, it became unnecessary for the presiding judge to determine the question between the conveyancers as to the validity of the mortgage.

*Exceptions overruled.*